UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLARENCE DELANEY, JR.,

                              Plaintiff,
                                                    9:13-CV-0648
v.                                                  (DNH/TWD)

DR. ZAKI, DR. S. RAMINENI,
M. CZERWINSKI, BRANDON J.
SMITH, DR. CARL KOENIGSMANN,

                              Defendants.
_____

APPEARANCES:                                        OF COUNSEL:

CLARENCE DELANEY, JR.
Plaintiff pro se
TASC
87 Columbia Street
Albany, NY 12210

HON. ERIC T. SCHNEIDERMAN                            RACHEL M. KISH, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION and ORDER</u>

    This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Clarence

Delaney, Jr., alleges that Defendants were deliberately indifferent to his serious medical needs

when he was incarcerated at Mid-State Correctional Facility ("Mid-State").  (Dkt. Nos. 11, 47.)

The matter is currently before the Court for screening of Plaintiff's second amended complaint (Dkt. No. 47) and for a ruling on Plaintiff's motion to appoint counsel (Dkt. No. 45). For the reasons that follow, I recommend that the Court dismiss the complaint sua sponte pursuant to 28 U.S.C. §§ 1915A and 1915(e). Further, because the complaint is not "likely to be of substance," I deny Plaintiff's motion to appoint counsel.

## I.    FACTUAL AND PROCEDURAL SUMMARY

### A.    Allegations of the Amended Complaint

In the amended complaint, Plaintiff alleged that before January 2, 2013, he was being prescribed Neurotin and Ultram for chronic pain to his right arm and elbow. (Dkt. No. 11 ¶ 8.) On January 2, 2013, Plaintiff was placed in the Special Housing Unit ("SHU") at Mid-State after being issued a misbehavior report charging him with possessing unauthorized medication in his cell. (Dkt. No. 11 ¶¶ 6, 9, 31.) When Plaintiff went to the prison medical clinic on January 2, 2013, he did not receive his noon medication dosages. *Id*. ¶ 9. Plaintiff's medications had been "discontinued without fair notice by defendant Dr. Zaki who the plaintiff had never met or had a medical appointment with prior to or after being prescribed medications for pain management." *Id*. One of the nurses informed Plaintiff that Defendant Zaki was an on-call doctor who worked at Marcy Correctional Facility, a mile away. *Id*. ¶ 11.

On January 16, 2013, Plaintiff saw Defendant Doctor Ramineni, who had treated Plaintiff before he was sent to the SHU, but was not the doctor who prescribed Plaintiff's pain medications. (Dkt. No. 11 ¶ 14.) Defendant Ramineni "spoke to the plaintiff from behind the cell door while plaintiff expressed how much he was suffering without his pain medication." *Id*. ¶ 15. Defendant Ramineni asked Plaintiff to put his right arm through the hole in the middle of

the cell door, examined Plaintiff's arm "for a quick second," stated "I can't do anything for your pain," and walked away from the cell. *Id*. ¶ 16.

Plaintiff saw Defendant Ramineni again on February 6, 2013. (Dkt. No. 11 ¶ 20.) Defendant Ramineni again remained behind the cell door, stated that he could not do anything for Plaintiff's pain, and left without prescribing any medication. *Id*. This visit lasted no more than three minutes. *Id*.

Plaintiff wrote two letters to Defendant Nurse Administrator Czerwinski complaining about the lack of pain medication. (Dkt. No. 11 ¶¶ 22-23.) Defendant Czerwinski did not respond to either letter. *Id*. ¶ 23. Plaintiff alleged that Defendant Czerwinski "justified defendants' actions by stating the plaintiff was hoarding and selling his medications which were untrue and without facts." *Id*. ¶ 48. Plaintiff further alleged that Defendant Czerwinski "was grossly negligent because she did not adequately supervise the subordinates who violated plaintiff's rights . . . . As Nurse Administrator to all medical personnel[] at Mid-State Correctional Facility, she failed to intervene when plaintiff wrote his letters of complaint directly to her." *Id*. ¶ 50.

Plaintiff alleged that Defendant Czerwinski "allowed unsigned anony[]mous letters from an inmate to be perman[ent]ly place[d] in plaintiff's medical file." (Dkt. No. 11 ¶ 49.) Plaintiff alleged that these letters "made an untrue statement" about Plaintiff. *Id*. ¶ 33.

Plaintiff wrote several letters to Defendant Smith, the Superintendent of Mid-State, complaining about the lack of pain medication. (Dkt. No. 11 ¶ 24.) Plaintiff received "a lukewarm response." *Id*.

On or about February 27, 2013, Defendant Ramineni saw Plaintiff in an examining room.

(Dkt. No. 11 ¶ 26.)  After that visit, Plaintiff received a prescription for Ibuprofen.  *Id*. ¶ 28.[1]

Plaintiff alleged that Defendant Carl Koenigsmann failed to respond to a grievance that Plaintiff appealed to the Central Office Review Committee regarding his medical care.  (Dkt. No. 11 ¶¶ 62-66.)

Plaintiff filed the original complaint in the action on June 6, 2013.  (Dkt. No. 1.)  Plaintiff filed an amended complaint as of right on October 9, 2013.  (Dkt. No. 11.)  The amended complaint was screened and service was directed on Defendants.  (Dkt. No. 12.)

### B.  Defendants' Motion to Dismiss

Defendants moved to dismiss the amended complaint.  (Dkt. No. 27.)  Defendants argued that the amended complaint should be dismissed because it failed to allege facts plausibly suggesting that (1) Defendants Zaki or Ramineni were deliberately indifferent to Plaintiff's serious medical needs; (2) Plaintiff's due process rights were violated; or (3) Defendants Czerwinski, Smith, and Koenigsmann were personally involved in the alleged constitutional violations.  (Dkt. No. 27-1.)  Defendants further argued that they were entitled to qualified immunity and could not be sued in their official capacities.  *Id*. at 13-15.[2]  Plaintiff opposed the motion.  (Dkt. No. 31.)

---

[1]    Although the complaint alleges only three visits by Defendant Ramineni, Plaintiff argues in his opposition to the motion to dismiss that he saw Defendant Ramineni on four occasions.  (Dkt. No. 31 at 9.)  The distinction between three or four visits does not alter this Report-Recommendation.

[2]    References to page numbers in citations to Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

### C. Ruling on the Motion to Dismiss

On September 2, 2014, I recommended that the Court grant Defendants' motion to dismiss with leave to amend. (Dkt. No. 41.) Specifically, I found that the amended complaint failed to allege facts plausibly suggesting that (1) Defendant Zaki was deliberately indifferent to Plaintiff's serious medical condition; (2) Defendant Ramineni was deliberately indifferent to Plaintiff's serious medical condition; or (3) Plaintiff's due process rights were violated. *Id.* at 7-11. I recommended that Plaintiff be granted leave to amend the complaint. *Id.* at 13.

The Court adopted the Report-Recommendation on September 30, 2014. (Dkt. No. 42.) Plaintiff requested and received an extension of time in which to file the second amended complaint. (Dkt. Nos. 43-44.) The matter is now before the Court for initial screening of Plaintiff's second amended complaint. (Dkt. No. 47.) Plaintiff has also filed a motion to appoint counsel. (Dkt. No. 45.)

## II. SCREENING OF THE SECOND AMENDED COMPLAINT

### A. Legal Standard

Under 28 U.S.C. § 1915A (2006), "[t]he court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a[n] . . . employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). In addition, 28 U.S.C. § 1915(e) directs that when a party proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous or

malicious[,] fails to state a claim on which relief may be granted[,] or . . . seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Although the court has the duty to show liberality towards pro se litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a pro se action, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), there is a responsibility on the court to determine that an action states a claim and that the claim is not frivolous before permitting a party to continue proceeding *in forma pauperis*. *See, e.g.*, *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint sua sponte if the complaint is frivolous).

**B.    Analysis**

The second amended complaint largely repeats the allegations of the first amended complaint. Plaintiff has, however, added some new factual allegations and changed some of the legal theories on which he relies.

Factually, Plaintiff has added allegations regarding Defendant Zaki and Defendant Ramineni's knowledge of the pain medication he was receiving before he was placed in the SHU. Specifically, Plaintiff alleges that Defendant Zaki reviewed Plaintiff's medical records on or about November 26, 2012, and "decided to prescribe Neurotin 800 mg 3x a day and Ultram 100 mg 3x a day for the plaintiff's serious multiple conditions." (Dkt. No. 47 ¶ 6.) Plaintiff alleges that Defendant Ramineni reviewed Plaintiff's chart before Plaintiff went into the SHU and "decided it was the proper medication for the plaintiff's medical condition." *Id.* ¶ 11. Plaintiff has also clarified that the statement that Defendant Czerwinski placed in his medical records was that Plaintiff's "medication[] was discontinued by Dr. Zaki due to the Plaintiff

6

hoarding and selling medication." *Id.* ¶ 21.

Legally, Plaintiff has dropped his due process claims. Plaintiff has also added several causes of action to those asserted in the amended complaint. Specifically, Plaintiff has added (1) an equal protection cause of action, claiming that he "would probably have been treated differently if he wasn't in the SHU" (*id.* ¶¶ 26-27); (2) a defamation cause of action against Defendant Czerwinski (*id.* ¶¶ 28-29); (3) a cause of action for mental and emotional distress (*id.* ¶ 30); and (4) a cause of action for medical negligence/malpractice (*id.* ¶¶ 31-33).

## A. Eighth Amendment Claims

### 1. Defendant Zaki

The Court dismissed Plaintiff's Eighth Amendment claim against Defendant Zaki because the first amended complaint did "not include any facts about Defendant Zaki's knowledge of Plaintiff's serious medical need" or "any facts plausibly suggesting that Defendant Zaki consciously or intentionally disregarded or ignored that serious medical need." (Dkt. No. 41 at 7.) Plaintiff was granted leave to amend to allege such facts. (Dkt. No. 41 at 13; Dkt. No. 42 at 2.)

In addition to the repetition of the facts alleged in the first amended complaint, Plaintiff now alleges that Defendant Zaki reviewed Plaintiff's medical records on or about November 26, 2012, and "decided to prescribe Neurotin 800 mg 3x a day and Ultram 100 mg 3x a day for the plaintiff's serious multiple conditions." (Dkt. No. 47 ¶ 6.) This fact plausibly suggests that Defendant Zaki was aware of Plaintiff's serious medical need. As in the first amended complaint, Plaintiff alleges in the second amended complaint that Defendant Zaki discontinued the medication after Plaintiff received a misbehavior report "related to unauthorize[d] medication

found in his cube area." *Id.* ¶¶ 7-8. This fact, without more, does not plausibly suggest that Defendant Zaki was deliberately indifferent to Plaintiff's serious medical need. Rather, it suggests that Defendant Zaki was concerned that Plaintiff was improperly using the medication. Therefore, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendant Zaki. Because Plaintiff has already had the opportunity to amend this claim, I recommend that the Court dismiss the claim without leave to amend.

### 2. Defendant Ramineni

The Court dismissed Plaintiff's Eighth Amendment claim against Defendant Ramineni because the first amended complaint did not allege any facts plausibly suggesting deliberate indifference, as opposed to simple disagreement with the doctor's medical judgment or an allegation of medical negligence. (Dkt. No. 41 at 8-10.) In the second amended complaint, in addition to the actions alleged in the first amended complaint, Plaintiff alleges that Defendant Ramineni reviewed Plaintiff's medical chart before Plaintiff entered the SHU and thus knew what medications Plaintiff was receiving. (Dkt. No. 47 ¶ 11.) The second amended complaint does not allege facts plausibly suggesting that Defendant Ramineni was deliberately indifferent to Plaintiff's serious medical needs. Again, Plaintiff has instead merely alleged facts suggesting that he disagreed with Defendant Ramineni's medical decisions or, at most, that Defendant Ramineni was medically negligent. Therefore, I recommend that the Court dismiss the Eighth Amendment claim against Defendant Ramineni without leave to amend.

### 3. Supervisory Defendants

The Court dismissed the Eighth Amendment claims against Defendants Czerwinski, Smith, and Koenigsmann because "[a] complaint that fails to state a claim for underlying

unlawful conduct also fails to state a claim against any supervisory officials named as defendants." (Dkt. No. 41 at 13.) As discussed above, the second amended complaint, like the first amended complaint, fails to state an Eighth Amendment claim against Defendants Zaki and Ramineni. Accordingly, it also fails to state an Eighth Amendment claim against Defendants Czerwinski, Smith, and Koenigsmann. Therefore, I recommend that the Court dismiss these claims without leave to amend.

### B. Equal Protection

In the second amended complaint, Plaintiff asserts an equal protection claim in place of the due process claim he asserted in the first amended complaint. (Dkt. No. 47 ¶¶ 26-27.) Specifically, Plaintiff claims that he "would probably have been treated differently if he wasn't in the SHU." *Id.* ¶ 26.

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). The Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis omitted) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Governmental action may also violate the Equal Protection Clause where the defendants intentionally treat the plaintiff "differently from others with no rational

basis for the difference in treatment." *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Thus, a plaintiff asserting an equal protection claim must allege facts plausibly suggesting that (1) he was treated differently from similarly situated individuals; and (2) the defendants treated him differently due to his membership in a suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally and arbitrarily.

Here, Plaintiff has not alleged that he was treated differently from similarly situated individuals. Rather, Plaintiff has alleged that he "probably" would have been treated differently if he were not in the SHU. (Dkt. No. 47 ¶ 26.) Even if Plaintiff had alleged facts plausibly suggesting that he *was*, in fact, treated differently than inmates who were not in the SHU, those facts would not plausibly suggest that Plaintiff was treated differently from "similarly situated" individuals. That is because inmates in the general population are not "similarly situated" to inmates in disciplinary confinement. *Smith v. Perlman*, No. 9:11-CV-0020 (MAD/DRH), 2012 U.S. Dist. LEXIS 36642, at *30, 2012 WL 929848, at *10 (N.D.N.Y. Mar. 19, 2012).[3] Therefore, I recommend that the Court dismiss the equal protection cause of action. Given the special solicitude that the Court is required to afford pro se litigants, the slight possibility that Plaintiff could amend this claim to state a cause of action, and the fact that Plaintiff has not yet had the opportunity to do so, I recommend that the Court dismiss this claim with leave to amend.

---

[3]     The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

## C.    State Law Claims

Plaintiff asserts state law claims for defamation,[4] mental and emotional distress, and medical negligence/medical malpractice.  (Dkt. No. 47 ¶¶ 28-33.)  In its discretion, the Court may decline to exercise supplemental jurisdiction over Plaintiff's state law claims because there is no surviving federal claim.  28 U.S.C. § 1367(c); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has original jurisdiction have been dismissed); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (vacating dismissal of state law claims against a defendant where federal claim remained against other defendants).  Here, I recommend that the Court exercise that discretion and dismiss Plaintiff's claims for defamation, mental and emotional distress, and medical negligence/medical malpractice without prejudice to reasserting those claims in the event that Plaintiff amends his federal equal protection claim.

## III.    PLAINTIFF'S MOTION TO APPOINT COUNSEL

Plaintiff moves for the appointment of counsel.  (Dkt. No. 45.)  Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 393 (2d Cir. 1997).  Instead, a number of factors must be carefully considered by the court in ruling upon such a motion.  *Hodge v. Police Officers*, 802 F.2d 58, 60-61 (2d Cir. 1986).  As a threshold matter, the court should ascertain

---

[4]     "Defamation . . . is an issue of state law, not of federal constitutional law, and therefore provides an insufficient basis to maintain a § 1983 action."  *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).  Thus, Plaintiff can only assert his claim for defamation under New York state law.

whether the indigent's claims seem likely to be of substance. *Id*. at 61. Here, as discussed above, this action is subject to sua sponte dismissal for failure to state a claim. Thus, it is not likely to be of substance. Therefore, Plaintiff's motion for appointment of counsel is denied without prejudice.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court dismiss Plaintiff's Eighth Amendment claims against Defendants Zaki, Ramineni, Czerwinski, Smith, and Koenigsmann without leave to amend; and it is further

**RECOMMENDED** that the Court dismiss Plaintiff's equal protection claim with leave to amend; and it is further

**RECOMMENDED** that the Court dismiss Plaintiff's claims for defamation, mental and emotional distress, and medical negligence/medical malpractice without prejudice to renew if Plaintiff amends his federal equal protection claim; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 45) is **DENIED** without prejudice; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Smith v. Perlman*, No. 9:11-CV-0020 (MAD/DRH), 2012 U.S. Dist. LEXIS 36642, 2012 WL 929848 (N.D.N.Y. Mar. 19, 2012).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a).


Dated: April 17, 2015
      Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

2012 WL 929848
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Aurel SMITH, Plaintiff,

v.

Kenneth PERLMAN, Deputy Commissioner
of Programs, NYS Department of Correctional
Services; Mark Leonard, Director of Ministerial
Services, NYS Department of Correctional Services;
Daniel Martuscello, Superintendent of Coxsackie
Correctional Facility; Captain R. Shanley, Captain,
Acting Deputy Superintendent of Security at
Coxsackie Correctional Facility; Saltsman,
Correctional Officer, Coxsackie Correctional
Facility; and Mr. J. Adams [1], Correctional Officer,
Coxsackie Correctional Facility, Defendants.

No. 9:11–CV–0020 (MAD/
DRH).    |    March 19, 2012.

**Attorneys and Law Firms**

Aurel Smith, Auburn, NY, pro se.

Hon. Eric T. Schneiderman, Attorney General for the State of
New York, Christopher W. Hall., Esq., of Counsel, Albany,
NY, for Defendants.

**MEMORANDUM–DECISION AND ORDER**

MAE A. D'AGOSTINO, District Judge.

**INTRODUCTION**

 *1  In this *pro se* action under 42 U.S.C. § 1983, plaintiff,
an <mark>inmate</mark> in the custody of the New York State Department
of Correctional and Community Supervision ("DOCCS"),
claims that defendants violated § 3 of the Religious Land Use
and Institutionalized Persons Act of 2000 ("RLUIPA"), 42
U.S.C. § 2000cc—1, the Free Exercise Clause of the First
Amendment and plaintiff's rights to Equal Protection under
the Fourteenth Amendment. In addition, plaintiff asserted
state law claims against defendants Martuscello, Saltsman
and Adams. Defendants' moved to dismiss the amended
complaint pursuant to Fed.R.Civ.P. 12(b)(6) (Dkt. No. 24)

and plaintiff cross moved to amend the complaint. (Dkt. No.
27). The motions were referred to United States Magistrate
Judge David R. Homer for a Report–Recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c).
Magistrate Judge Homer issued a Report–Recommendation
(Dkt. No. 33) recommending that the motion to dismiss be
granted in part and denied in part and further, recommending
that plaintiff's cross motion to amend be denied. [2]

Plaintiff and defendants filed specific objections to the
Report–Recommendation. (Dkt. Nos. 34 and 36). In view
of the objections and pursuant to 28 U.S.C. § 636(b)(1),
this Court conducts a *de novo* review of these issues.
The Court reviews the remaining portions of the Report–
Recommendation for clear error or manifest injustice. *See
Brown v. Peters,* 1997 WL 599355, at *2–3 (N.D.N.Y.)
*aff'd without op.,* 175 F.3d 1007 (2d Cir.1999). After the
appropriate review, "the court may accept, reject, or modify,
in whole or in part, the findings or recommendations made by
the magistrate judge." 28 U.S.C. § 636(b)(1).

**BACKGROUND**

**I. The Amended Complaint [3]**
At the relevant time, plaintiff was incarcerated at Great
Meadow Correctional Facility ("GMCF") and Coxsackie
Correctional Facility ("CSF"). Plaintiff is a Muslim of
orthodox (or Sunni) belief and practice. Two of the holy
days observed by Muslims are the two 'Eids ('EidulFitr and
'Eidul Adhaa). Both 'Eids are observed similarly and include
a special prayer, sermon, a religious feast, family attendance
and charitable acts to the poor. Family/guest attendance
and participation is an integral part of the 'Eids. Plaintiff's
religion also obligates him to attend weekly congregate
services on Friday afternoons known as "Jum'ah". Jum'ah
services include a religious sermon given by a Muslim
Chaplain and a special prayer. At CSF, Jum'ah services
are regularly scheduled to occur on Friday afternoons in
the gymnasium. Plaintiff regularly attended such services
while confined in the general population at CSF. Plaintiff
also regularly attended Islamic Studies (Ta'lim) classes on
Saturday afternoons at CSF. Attendance at these classes was
on a "list basis" and <mark>prisoners</mark> would receive a "call out slip/
pass".

**A. Family/Guest Participation in the 'Eids**

From 1982 until December 2007, DOCCS officials accommodated family/guest attendance and participation in the 'Eids. In December 2007, plaintiff claims that officials, "abruptly and without notice" limited the Muslim ==inmates== to one family event per year. Accordingly, only one of the 'Eids could be celebrated with the family members/guests of the ==inmates==. Plaintiff alleges that no such limitations were placed on Native American services which allows family participation. To wit, DOCCS continues to accommodate at least nine holy days of Native American observance and allowed family/guest participation. Upon learning of the change in policy, in December 2008 (while incarcerated at GMCF), plaintiff wrote a letter to Commissioner Fischer regarding the "religious violations". [4] On January 15, 2009, defendant Perlman [5] responded to plaintiff's letter advising plaintiff to file a formal grievance at the facility level. [6] In December 2008, plaintiff filed a grievance and submitted letters to DOCCS officials seeking intervention. The ==Inmate== Grievance Review Committee ("IGRC") deadlocked on the issue and plaintiff's grievance was forwarded to the GMCF Superintendent. Superintendent Williams denied plaintiff's grievance noting:

**\*2** per ministerial services [7], Central Office allows one family event per year, with the exception of the Native American faith group. A Native American religious ceremony is observed with a family meal. The other religions do not require a family meal as part of the religious observance.

Plaintiff appealed this decision to the Central Office Review Committee ("CORC"). CORC upheld the Superintendent's denial. [8] On January 20, 2009, plaintiff wrote a letter to Perlman seeking to resume family participation in the 'Eid holy days. Plaintiff received a response to his letter to Perlman from Karen Bellamy, Director of the ==Inmate== Grievance Program. On January 31, 2009, plaintiff wrote a letter to the Commissioner regarding violations of his religious rights. On March 9, 2009, plaintiff received a letter from Perlman which stated, "there are no plans at the current time to reinstate two religious family events". [9]

**B. Weekly Congregate Religious Services**
In January 2009, plaintiff was transferred to CSF. In May 2009, plaintiff claims he was harassed by his housing unit officer, C.O. Stevens. [10] Plaintiff filed grievances against C.O. Stevens and plaintiff alleges that as a result, C.O.

Stevens issued plaintiff a misbehavior report for non-compliance to cell standards. [11] Plaintiff claims that, in CSF, once a ==prisoner== is issued a misbehavior report, the ==inmate== is transferred from the general population to keeplock housing, even for pre-hearing confinement. In this instance, however, plaintiff was not placed in keeplock for Steven's non-compliance report. Plaintiff claims that when Stevens realized that plaintiff was not placed in keeplock, Stevens issued another misbehavior report claiming that plaintiff verbally threatened him. [12] After this report was issued, plaintiff was placed in keeplock pending a Tier 2 disciplinary proceeding. On August 1, 2009, plaintiff was found guilty of the violations and placed in keeplock for 30 days until September 1, 2009.

DOCS Directive 4202 required ==inmates== in keeplock to notify officials, in writing, upon commencement of keeplock confinement, if the ==inmate== wished to attend regularly scheduled congregate religious services. Plaintiff admits that he did not file such a request to attend services on the first Friday in August 2009 but that he filed three separate requests to attend services on the remaining three Fridays in August 2009. Plaintiff addressed each of request to defendant Martuscello. Martuscello was the Deputy Superintendent of Security at CSF and Acting Superintendent in August 2009. Plaintiff alleges that Martuscello was, "responsible for either deciding plaintiff's requests to attend congregate religious services while on keeplock, or designat[ing] a subordinate to so decide plaintiff's requests". Martuscello forwarded plaintiff's requests to defendant Shanley. Shanley was the Captain at CSF and Acting Deputy Superintendent of Security in August 2009. Shanley denied plaintiff's requests explaining that plaintiff was given a misbehavior report for threats. Plaintiff claims that there was no further explanation for the refusal to allow him to attend services.

**\*3** Plaintiff wrote letters to Martuscello contending that Shanley's denials were insufficient and filed grievances regarding the denials. Plaintiff's first grievance was denied. Plaintiff appealed the denial to the Superintendent (Martuscello) who upheld the IGRC decision. CORC affirmed the decision with regard to the first grievance. Plaintiff's second grievance was accepted by IGRC and CORC. [13]

**C. Saturday Religious Study**
On February 6, 2010, while still incarcerated at CSF, plaintiff was scheduled to attend a Ta'lim class at 12:30 p.m. Plaintiff

received a call-out slip and his name was on the attendance list. At that time, plaintiff was housed in the A–3 unit and his housing officers were C.O. Saltsman and C.O Adams. At 12:30 p.m., plaintiff stopped Saltsman as he was passing plaintiff's cell to inform him of his "callout". Saltsman reviewed the call out slip but did not release plaintiff from his cell. Plaintiff also informed C.O. Adams of his call-out and while Adams verbally acknowledged that studies were being held and did not dispute that plaintiff was scheduled to attend, he did not release plaintiff. Plaintiff missed the religious studies class. Plaintiff filed a grievance regarding the matter. Plaintiff claims he was interviewed regarding the matter but his grievance was denied. [14]

### D. Causes of Action

On January 7, 2011, plaintiff filed an amended complaint asserting eight causes of action as follows: In Counts One, Two and Three, plaintiff claims that Perlman and Leonard violated his rights to Equal Protection, his First Amendment rights and his right to free exercise of religion pursuant to the RLUIPA because the DOCCS policy limited the number of annual religious family events for Muslim **prisoners** while Native American **inmates** were allowed nine such events. In Counts Four and Five, plaintiff claims that Martuscello and Shanley violated his First Amendment rights, his rights pursuant to the RLUIPA and his Fourteenth Amendment right to Equal Protection when they refused to allow plaintiff to attend weekly religious services while plaintiff was in keeplock. In Count Six, plaintiff alleges a state law claim against Martuscello for negligent supervision. In Count Seven, plaintiff claims that Saltsman and Adams violated his First Amendment rights and rights under the RLUIPA when they failed to allow him to attend religious studies on February 6, 2010. In Count Eight, plaintiff alleges state law negligence claims against Saltsman and Adams. (Dkt. No. 5).

### II. Report–Recommendation

On August 12, 2011, defendants moved to dismiss arguing: (1) that Perlman, Leonard and Martuscello lacked personal involvement; (2) plaintiff's religious claims against Martuscello, Shanley, Saltsman and Adams should be dismissed for failure to state a claim; (3) the equal protection claims against Martuscello and Shanley should be dismissed for failure to state a claim; and (4) the negligence claims are barred by Corrections Law § 24. [15] Plaintiff opposed the motion and cross moved to amend the complaint.

**\*4** On February 28, 2012, Magistrate Judge Homer recommended that the Court grant in part and deny in part defendants' motion to dismiss. Magistrate Homer recommended that defendants' motion to dismiss be granted as to (1) plaintiff's First Amendment and RLUIPA claims against Martuscello and Shanley for denying plaintiff attendance at Friday religious services; (2) plaintiff's First Amendment and RLUIPA claims against Saltsman and Adams for denying plaintiff attendance at Saturday religious study group; (3) plaintiff's equal protection claim against Martuscello and Shanley for precluding plaintiff and other keeplock **inmates** from attending religious services; and (4) plaintiff's negligence claims against Martuscello, Saltsman and Adams. Magistrate Judge Homer also found that plaintiff did not establish personal involvement on the part of Martuscello. Magistrate Judge Homer also recommended denying plaintiff's motion to amend. Plaintiff sought to add New York State as a defendant and Magistrate Judge Homer reasoned that such an amendment would be futile under the Eleventh Amendment.

### III. Objections

Both parties have objected to the Report–Recommendation. Defendants argue that Judge Homer erred when he failed to dismiss all claims against Leonard due to lack of personal involvement. Specifically, defendants object to the reliance upon exhibits attached to plaintiff's complaint as evidence of Leonard's personal involvement. Plaintiff also objects to the Report–Recommendation on various grounds. Plaintiff argues that Magistrate Judge Homer erred when he found: (1) that Martuscello lacked personal involvement; (2) plaintiff's religious rights were not substantially burdened when he was denied the right to attend three consecutive Jum'ah services; (3) defendants asserted a legitimate penological interest sufficient to defeat plaintiff's First Amendment claims and RLUIPA claims against Martuscello and Shanley; (4) plaintiff failed to establish the necessary elements for a Fourteenth Amendment Equal Protection claim against Martuscello and Shanley.

### DISCUSSION

### I. Standard on Motion to Dismiss

In a rule 12(b)(6) motion to dismiss, the court must accept as true all of the factual allegations in the complaint, which is deemed to include any written instrument attached to the complaint as an exhibit, any materials incorporated into it

by reference, and any other documents that are integral to it. *See Sira v. Morton,* 380 F.3d 57, 67 (2d Cir.2004) (citations omitted). Moreover, the court must draw all reasonable inferences from those factual allegations in the plaintiff's favor. *See Hayden v. Paterson,* 594 F.3d 150, 160 (2d Cir.2010) (quotation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to it nor incorporated by reference into the pleading. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir.2006) (quoting *Chambers v. Time Warner, Inc. .,* 282 F.3d 147, 152–53 (2d Cir.2002)).

**\*5** So read, the complaint must include "enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim to relief is plausible on its face "when the Plaintiff pleads fact[s] ... that allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). When a dismissal is sought against a *pro se* litigant, the court will afford the non-movant special solicitude. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (quotation and citations omitted). The submissions of a *pro se* litigant are to be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Id.* at 475 (internal quotation and citations omitted).

Courts are reluctant, "to dismiss [*pro se* ] complaints at an early stage of the proceedings. *McEachin v. McGuinnis,* 357 F.3d 197, 201 (2d Cir.2004) (noting the difficulties attendant to appellate proceedings where the defendant has not answered the plaintiff's allegations). The issue at the dismissal stage "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998). Dismissal will only be granted by the court if it "appears beyond doubt that plaintiff can prove no set of facts in support of the claim which would entitle him to relief." *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996). Here, defendants filed the motion to dismiss but have not yet answered the amended complaint.

## II. Personal Involvement
Defendants moved to dismiss all claims against Perlman, Leonard and Martuscello based upon lack of personal involvement. "[P]ersonal involvement of defendants in

alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (internal quotation and citations omitted). "[W]hen monetary damages are sought under § 1983, the [ ] doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required." *Id.* (quotation omitted). There is a sufficient showing of personal responsibility of a defendant if (1) the defendant directly participated in the alleged constitutional deprivation; (2) the defendant is a supervisory official who failed to correct the wrong after learning about it through a report or appeal; (3) the defendant is a supervisory official who created a policy or custom under which the constitutional deprivation occurred, or allowed such a policy or custom to continue; or (4) the defendant is a supervisory official that was grossly negligent in managing subordinates who caused the constitutional deprivation. *See Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986) (citations omitted).

## A. Perlman [16]
**\*6** In the amended complaint, plaintiff alleges that he received two letters from Perlman dated January 15, 2009 and March 9, 2009 regarding the policy of limiting Muslim family events. Plaintiff annexed both letters as exhibits to his correspondence. *See* Am. Cmplt., Exs. E and O. Perlman also is the "approving authority" on Directive 4202 entitled Religious Programs and Practices and the author of a Memorandum distributed to Superintendents and Deputy Superintendents for Program Services regarding the Religious Calendar. *See id.* at Exs. P and S. At this stage, plaintiff has alleged sufficient facts regarding Perlman's involvement with the alleged constitutional issues. The Court has reviewed Magistrate Judge Homer's reasoning and conclusions on this issue and finds no clear error. Accordingly, this portion of the Report–Recommendation is adopted and defendants' motion to dismiss on this basis is denied.

## B. Leonard
Plaintiff alleges that he wrote to Leonard but did not receive a response from him. Plaintiff also claims that Leonard, "personally told Sgt. D. Williams that amongst the reasons for reducing family attendance accommodation from the ['Eids] observance is that family participation is not mandatory for it's observance". Pltf. Am. Cmplt. at para. 41. In support, plaintiff annexed Superintendent Williams' January 22, 2009 response to his grievance to his amended complaint. *Id.* at

Ex. I. As noted above, Williams denied plaintiff's grievance after consulting with Ministerial Services. At the relevant time, Leonard was the Director of Ministerial Services. At this early stage, plaintiff has sufficiently alleged Leonard's personal involvement in the alleged constitutional violations. *Pugh v. Goord,* 571 F.Supp.2d 477, 514 (S.D.N.Y.2008) (the plaintiff sufficiently alleged personal involvement on the part of defendant Leonard as personally involved in the denial of separate services to Shi'ites because he made "certain contributions" to "formulation of policy," despite the fact that he was not "the ultimate authority.") Accordingly, the Court adopts this portion of the Report–Recommendation and denies Leonard's motion to dismiss due to lack of personal involvement.

### C. Martuscello

Plaintiff allege that Martuscello was personally involved in his constitutional violations because he: (1) failed to respond to plaintiff's letters, (2) forwarded plaintiff's requests to Shanley, (3) denied plaintiff's grievances; and (4) was in a position in the chain of command. Magistrate Judge Homer found that plaintiff's allegations were insufficient to establish personal involvement. Plaintiff objects to Magistrate Judge Homer's findings arguing that Martuscello, "had the ability to remedy the wrongs now complained of although such wrongs occurred by his subordinate" and that he, "allowed the offending conduct to continue without any action upon plaintiff's complaints". Moreover, plaintiff claims that when Martuscello was Deputy Superintendent of Security, he maintained the custom of, "not allowing keeplocked **inmate** attendance at religious service, in an arbitrary and blanketed fashion". Finally, plaintiff alleges that Martuscello was, "placed on notice and failed to act in any way ... simply allowed the violations to continue to occur". *See* Pl. Obj. at p. 2–3.

**\*7** While allegations of Martuscello's failure to respond to plaintiff's letters, his denial of grievances and his position in the chain of command are insufficient to establish personal involvement, liberally construing the amended complaint, plaintiff has also alleged that Martuscello created an unconstitutional policy, or at least allowed such a policy to continue. This suffices to state a claim against Martuscello as the individual within GMCF for creating and continuing department-wide policies. *See Williams,* 781 F.2d at 321. Defendants' motion to dismiss plaintiff's federal claims against Martuscello due to lack of personal involvement is denied.

### III. Claims Against Martuscello and Shanley

In Counts Four and Five, plaintiff alleges that Martuscello and Shanley violated his rights under the RLUIPA, the First Amendment and the Fourteenth Amendment when they refused to allow plaintiff to attend three consecutive Friday services while in keeplock.

### A. First Amendment

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. U.S. Const. Amend. I **Inmates** are guaranteed the right to participate in congregate religious services under most circumstances. *See, e.g., Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993) (citing cases). To assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective. *Farid v. Smith,* 850 F.2d 917, 925–926 (2d Cir.1988). Here, defendants do not claim that plaintiff's beliefs are not sincerely held.

"[A] **prisoner** mounting a free-exercise challenge must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin,* 467 F.3d at 274–75. In order to be considered a "substantial burden," the plaintiff "must demonstrate that the government's action pressure[d] him to commit an act forbidden by his religion or prevent [ed] him from engaging in conduct or having a religious experience mandated by his faith." *Smith v. Artus,* 2010 WL 3910086, at * 11 (N.D.N.Y.2010) (citing *Muhammad v. City of New York Dep't of Corr.,* 904 F.Supp. 161, 188 (S.D.N.Y.1995) (citations omitted)). The burden must be more than an inconvenience, it must substantially interfere with a tenet or belief that is central to the religious doctrine. *Id.* (citing *Jones v. Shabazz,* 352 F. App'x 910, 913 (5th Cir.2009) (holding that a "government action or regulation only creates a substantial burden on a religious exercise if it truly pressures an adherent to significantly modify his religious behavior and significantly violate his religious beliefs")).

Once plaintiff establishes this burden, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin,* 467 F.3d at 308 (the right of prison **inmates** to exercise their religious beliefs is subject to valid penological

concerns, including those relating to institutional security). Once defendants carry this burden of production, "the burden remains with the ==prisoner== to show that these articulated concerns were irrational." *Id.* A determination of whether the refusal to permit attendance at a religious service is "one of reasonableness, taking into account whether the particular [act] affecting [the] constitutional right ... is 'reasonably related to legitimate penological interests.' " *Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) "The law is well established that a generally applicable policy will not be held to violate a [==prisoner's==] right to free exercise of religion if that policy is reasonably related to legitimate penological interests." *Hall v. Ekpe,* 408 F. App'x 385, 387–388 (2d Cir.2010) (citing cases). When determining whether the burden imposed by the defendants is reasonable rather than irrational, a court evaluates four factors: (1) whether the action had "a valid, rational connection to a legitimate governmental objective"; (2) whether the ==prisoner== has an "alternative means of exercising the burdened right"; (3) "the impact on guards, ==inmates==, and prison resources of accommodating the right"; and (4) "the existence of alternative means of facilitating [the plaintiff's] exercise of the right that have only a *de minimis* adverse effect on valid penological interests." *Salahuddin,* 467 F.3d at 274 (citing *Turner v. Safley,* 482 U .S. 90–91 (1987)).

**\*8** Here, plaintiff claims that while in keeplock, plaintiff requested and was denied access to three consecutive Friday services. Defendants argue that this "limited deprivation" did not substantially burden plaintiff's religious exercise. On a Rule 12(b)(6) motion, the Court accepts the allegations of the complaint as true and draws all inferences in favor of plaintiff. At this stage, the Court finds that plaintiff has alleged sufficient facts to establish that missing three consecutive Jum'ah services while housed in keeplock substantially burdens his right to attend congregate religious services. *See Salahuddin,* 993 F.2d at 308 (2d Cir.1993) (noting ==prisoners== have a constitutional right to participate in congregate religious services); *see also Smith v. Artus,* 2010 WL 3910086, at \*12 (N.D.N.Y.2010).

Defendants claim, without evidentiary support, that Shanley had a legitimate penological interest for denying plaintiff's requests. Defendants assert, "Shanley checked off two boxes on the DOCCS form and wrote that 'plaintiff [w]as given a misbehavior report for threats". However, defendants did not annex the DOCCS form to their motion to dismiss. Moreover, the motion does not contain an affidavit from Shanley or any other defendant. Defendants present nothing more than

the assertions of counsel in the memorandum of law in support of their "legitimate interest". As noted previously, the record does not contain any documentary evidence regarding this issue including plaintiff's requests or Shanley's denials. Defendants' suggestion in their memorandum of law that security concerns prompted them to deny plaintiff's requests to attend religious services is "outside the record and devoid of evidentiary support." *Samuels v. Stone,* 1999 WL 624549, at \*3 (S.D.N.Y.1999) ("[a]lthough defendants may ultimately proffer a reasonable justification for depriving plaintiff of the right to attend religious services", the Court must await a more developed factual record). It is error to assume that prison officials were justified in limiting plaintiff's First Amendment rights simply because he was in disciplinary confinement. *LaReau v. MacDougall,* 473 F.2d 974, 979, n. 9 (2d Cir.1972). On a motion to dismiss, plaintiff is afforded every reasonable inference. It is incumbent upon prison officials to make a showing establishing whether officials had a reasonable basis for limiting the ==inmates== participation in religious services. *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir.1989) (citing *Mawhinney v. Henderson,* 542 F.2d 1, 3 (2d Cir.1976) (an evidentiary hearing is necessary)). Without such evidence, the prison officials are not entitled to dismissal, at this juncture. *See id.* (the district court should not have dismissed the plaintiff's first amendment claim without requiring prisons officials to establish the basis for the restrictions imposed). Accordingly, the Court finds that plaintiff has stated a plausible claim for a First Amendment violation.

**\*9** While defendants assert that plaintiff's claims are "conclusory", the Court disagrees. In a case with similar factual and legal issues, the Second Circuit held:

> [W]e believe that [the plaintiff's] pleadings were sufficiently clear and specific to state a claim for which relief might be granted. The district court's ruling that [the] allegations were "conclusory" simply is not supported by a review of [the plaintiff's] complaint and moving papers. [The plaintiff] clearly states that ... he was precluded from attending religious services, classes, and any of the activities associated with the celebration of Ramadan, because of his placement in the limited privilege program, and his subsequent placement in punitive keeplock. We

do not believe that these allegations can be characterized as ambiguous or conclusory.

*Young,* 866 F.2d at 570.

In a case in this District with similar facts, on a motion to dismiss, Magistrate Judge Peebles concluded:

> While [ ] it may ultimately be found, based upon a more fully developed record, that this claim is legally deficient, in that plaintiff's allegations fail to establish an infringement of constitutional proportions upon his free exercise rights, and that the denials were proper based upon legitimate penological concerns, it is premature at this juncture, giving plaintiff the benefit of all inferences, to find as a matter of law that plaintiff cannot establish any set of facts sufficient to support a free exercise claim. I therefore recommend denial of defendants' motion to dismiss this cause of action.

*Gill v. Hoadley,* 261 F.Supp.2d 113, 124 (N.D.N.Y.2003). For these reasons, defendants' motion to dismiss plaintiff's First Amendment claims based upon the denial of plaintiff's requests to attend services while in keeplock is denied.

## B. RLUIPA

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson,* 544 U.S. 709, 723, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The principles applicable to the analysis of plaintiff's First Amendment free exercise claim are similar to those applicable to the potential RLUIPA cause of action, although the two claims are analyzed under somewhat different

frameworks. *Griffin v. Alexander,* 2011 WL 4402119, at *8–10 (N.D.N.Y.2011) (citing *Salahuddin,* 467 F.3d at 274). "To establish a violation of the RLUIPA a plaintiff must prove that prison officials, through their actions, have substantially burdened his or her religious exercise through actions not found to promote a compelling governmental interest advanced through the least restrictive means." *Id.* (citation omitted). "The RLUIPA places a higher burden on the defendants than does the First Amendment, which requires only a burden that is reasonably related to legitimate penological interests". *Id.*

 **\*10** In support of the motion to dismiss these claims, defendants present the same arguments asserted in support of dismissal of the First Amendment claims. Magistrate Judge Homer recommended dismissing plaintiff's RLUIPA claims noting that the allegations failed to establish that defendants' actions were not supported by a legitimate penological interest or that the actions substantially burdened his practices. As discussed above, the Court finds, at this stage of the litigation, that plaintiff has set forth allegations that sufficiently allege a First Amendment violation. For the same reasons, plaintiff has sufficiently plead a claim under RLUIPA. Thus, defendants' motion to dismiss plaintiff's RLUIPA claims as they relate to the denial of plaintiff's requests to attend services while in keeplock is denied.

## C. Equal Protection

The Fourteenth Amendment to the United States Constitution provides in relevant part that "nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "In the context of prison regulations or the activity of prison guards which allegedly infringe an **inmate's** right to practice his or her religion, a complaint alleging a violation of the Equal Protection Clause requires an allegation that a particular group or class of individuals has been treated differently from others within the institution." *See Benjamin,* 905 F.2d at 575 (2d Cir.), *cert. denied,* 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990). To establish an equal protection claim, plaintiff must show the existence of a similarly situated group who has been treated differently than plaintiff. *Brown v. City of Oneonta,* 911 F.Supp. 580, 587, *modified* 106 F.3d 1125 (2d Cir.1997). Once having defined the appropriate class, plaintiffs must then demonstrate that they were treated differently than other people in the same class. *Pal v. Albany County Dep't of Soc. Servcs.,* 1992 WL 75046, at *5 (N.D.N.Y.1992); *see Giano v. Senkowski,* 54 F.3d 1050, 1057 (2d Cir.1995) (to prove a violation of the Equal Protection Clause, a plaintiff must

demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class).

Plaintiff alleges that Martuscello and Shanley violated his equal protection rights, "by excluding all disciplinary keeplocked **prisoners** from attending weekly congregate religious services". Plaintiff alleges that defendants failed to offer disciplinary keeplocked **prisoners** equal protection of the law with regard to their religious observances". Even construing plaintiff's complaint liberally, plaintiff has not alleged how he was treated differently than others similarly situated. Plaintiff has alleged that as a keeplocked **prisoner**, he was treated differently than the general population. However, **inmates** in the **general population** are not "**similarly situated**" to plaintiff. *Williams v. Bailey,* 2010 WL 3881024, at *2 (N.D.N.Y.2010) (the primary difference between keeplock and the general population confinement conditions is that keeplocked **inmates** do not leave their cells for out-of-cell programs, and are usually allowed less time out of their cells on the weekends.); *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989) (keeplock is a form of confinement restricting an **inmate** to his or her cell, separating the **inmate** from others and depriving him or her of participation in normal prison activities.); *McDowell v. Gates,* 2009 WL 3055270, at *3 (N.D.N.Y.2009) (keeplock segregates an **inmate** from other **inmates** in the general population of a prison and denies the **inmate** normal prison activities). Accordingly, defendants' motion to dismiss plaintiffs' equal protection claim as it relates to his denial to attend services while in keeplock is granted.

### IV. Claims Against Saltsman and Adams

**\*11** Plaintiff alleges that Saltsman and Adams violated his First Amendment rights and his rights under the RLUIPA when they failed to take him to one meeting of a Saturday religious study group. Plaintiff objects to the portion of Magistrate Judge Homer's Report–Recommendation which stated, "Smith also contends that Saltsman and Adams violated his First Amendment rights when the failed to take him from keeplock to one meeting of a Saturday religious study group". Plaintiff claims that at that time, he was in the general population and not confined to keeplock. The record supports plaintiff's argument. However, that fact does not substantively impact Magistrate Judge Homer's conclusions or the analysis herein.

Regardless of where plaintiff was housed, courts in this Circuit have consistently held that missing one or two

religious service(s) does not constitute a substantial burden on an **inmate's** right to the free exercise of his religion. *Gill v. DeFrank,* 8 F. App'x 35, 37 (2d Cir.2001); *Smith v. Graziano,* 2010 WL 1330019, at *9 (N.D.N.Y.2010); *Hankins v. NYS Dep't of Corr. Servcs.,* 2008 WL 2019655, at *5, n. 42 (N.D.N.Y.2008) (collecting cases).

Upon review, the Court finds no clear error or manifest injustice and adopts this portion of the Report and Recommendation. Accordingly, plaintiff's seventh cause of action is dismissed.

### V. State Law Claims [17]

Section 24(1) of the New York State Correction Law provides in pertinent part:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department [of corrections], in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Corr. Law § 24(1). The statutory protection has been provided to permit correction officers to perform the demanding task of maintaining safety and security within correctional facilities "undeterred by the fear of personal liability and vexatious suits, which could substantially impair the effective performance of a discretionary function." *Ierardi v. Sisco,* 119 F.3d 183, 187 (2d Cir.1997).

Upon review, the Court finds no clear error or manifest injustice and adopts this portion of the Report and Recommendation. Accordingly, plaintiff's sixth and eighth causes of action are dismissed.

### VI. Plaintiff's Motion to Amend [18]

Plaintiff cross moved to amend the complaint to add New York State as a defendant. The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 90–100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

It is well-settled that states are not "persons" under section 1983 and, therefore, that statute does not abrogate a state's Eleventh Amendment immunity. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Accordingly, the Court finds no clear error or manifest injustice and adopts this portion of the Report–Recommendation.

## CONCLUSION

**\*12** It is hereby

**ORDERED** that the Report and Recommendation by United States Magistrate Judge David R. Homer (Dkt. No. 33) is rejected in part and accepted in part for the reasons set forth herein; and it is further

**ORDERED** that defendant Perlman and Leonard's motion to dismiss plaintiff's claims (Dkt. No. 24) due to lack of personal involvement is **DENIED;** it is further

**ORDERED** that defendant Martuscello's motion to dismiss plaintiff's claims (Dkt. No. 24) due to lack of personal involvement is **DENIED;** it is further

**ORDERED,** that defendants' motion to dismiss plaintiff's First Amendment claims and RLUIPA claims against Martuscello and Shanley (Dkt. No. 24) is **DENIED;**

**ORDERED,** that defendants' motion to dismiss plaintiff's Equal Protection claims against Martuscello and Shanley (Dkt. No. 24) is **GRANTED;**

**ORDERED,** that defendants' motion to dismiss plaintiff's First Amendment and RLUIPA claims against defendants Saltsman and Adams (Dkt. No. 24) is **GRANTED;** and it is further

**ORDERED,** that defendants' motion to dismiss plaintiff's state law claims against Martus cello (Dkt. No. 24) is **GRANTED;** it is

**ORDERED,** that defendants' motion to dismiss plaintiff's negligence claims against Saltsman and Adams (Dkt. No. 24) is **GRANTED;** it is further

**ORDERED,** that plaintiff's cross-motion to amend the complaint (Dkt. No. 27) is **DENIED.**

**IT IS SO ORDERED.**

Footnotes

| 1 | Mr. J. Adams correct first name is "Todd". |
|---|---|
| 2 | The Clerk is directed to append Judge Homer's Report–Recommendation to this decision, and familiarity is presumed. (Dkt. No. 33). |
| 3 | In reviewing the amended complaint, as well as plaintiff's other submissions, the Court accepts as true all factual allegations and draws all reasonable inferences in plaintiff's favor for purposes of the pending motion. *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir.2007). |
| 4 | The letter is part of the record herein. |
| 5 | Perlman was Deputy Commissioner for Program Services for DOCCS. |
| 6 | The letter is part of the record herein. |
| 7 | Defendant Leonard was the Director of Family and Ministerial Services for DOCCS. |
| 8 | Plaintiff's grievance, the IGRC response and the CORC decision are part of the record herein. |
| 9 | The letters are part of the record herein. |
| 10 | Stevens is not a defendant. |
| 11 | The grievances and misbehavior report are not part of the record herein. |
| 12 | The misbehavior report is not part of the record herein. |
| 13 | Plaintiff's requests, letters, Shanley's denials, plaintiff's grievances and appeals are not part of the record herein. |
| 14 | Plaintiff's grievance and the subsequent denial are not part of the record herein. |
| 15 | Defendants did not move to dismiss plaintiff's First Amendment claims, RLUIPA claims or Equal Protection claims based upon the family guest attendance policy against Perlman and Leonard for failure to state a claim. Rather, defendants relied solely on the "personal involvement" argument in support of dismissing Counts One, Two and Three of the amended complaint. |
| 16 | Defendants do not object to the recommendation denying Perlman's motion to dismiss for lack of personal involvement. |
| 17 | Plaintiff does not object to this portion of Magistrate Judge Homer's Report–Recommendation. |

18    Plaintiff does not object to this portion of the Report–Recommendation. On March 13, 2012, plaintiff filed a motion to amend the complaint. (Dkt. No. 37). That motion is not before the Court.

 © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw**Next**® © 2015 Thomson Reuters. No claim to original U.S. Government Works. 10